USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1606 UNITED STATES OF AMERICA, Appellee, v. ZULMA JORGE TORRES, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Gilberto Gierbolini, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Keeton,* District Judge. ______________ ____________________ Gustavo A. Gelpi, Assistant Federal Public Defender, with whom ________________ Benicio Sanchez-Rivera, Federal Public Defender, was on brief for _______________________ appellant. Jeanette Mercado-Rios, Assistant United States Attorney, with _____________________ whom Jose A. Quiles-Espinosa, Senior Litigation Counsel, was on brief _______________________ for the United States. ____________________ August 31, 1994 ____________________ ____________________ * Of the District of Massachusetts, sitting by designation. BOUDIN, Circuit Judge. On December 19, 1992, Zulma _____________ Jorge-Torres arrived in San Juan, Puerto Rico, on a flight from Barbados. Customs inspection revealed that her handbag contained a false bottom filled with heroin. This, together with the heroin concealed in her tennis shoes and a pen holder, was later found by laboratory analysis to amount to 1.5 kilograms of heroin with a purity strength of 97 per cent. Jorge-Torres was charged with knowing possession with intent to distribute and with importation, in a two-count indictment under 21 U.S.C. 841(a)(1) and 952(a). Thereafter, Jorge-Torres changed her initial not guilty plea to a plea of guilty to both counts and sought to cooperate with the government. It appears that Jorge-Torres then provided the government with whatever limited information she had concerning the network, including how the transaction occurred and who supplied the drugs or was otherwise involved. Under the Sentencing Guidelines, a quantity of heroin between 1 and 3 kilograms corresponds to a base offense level of 32. See U.S.S.G. 2D1.1(a)(3). With a four-point ___ reduction for minimal participation and a further three-point reduction for acceptance of responsibility, U.S.S.G. 3B1.2(a), 3E1.1(b), Jorge-Torres' total offense level was 25. Given a criminal history category of I, the guideline imprisonment range was 57-71 months. However, by statute the minimum term for the offenses, based on the quantity of drugs involved, is ten years. See ___ 21 U.S.C. 841(b)(1)(A), 960(b)(1)(A). On motion by the government, the district court has the authority to "impose a sentence below a level established by statute as [a] minimum sentence so as to reflect the defendant's substantial assistance" in investigating or prosecuting another. 18 U.S.C. 3553(e). See also U.S.S.G. 5K1.1 (permitting a _________ comparable departure from the guidelines). The district court cannot sentence below a statutory minimum based on substantial assistance unless the government so moves. See ___ Wade v. United States, 112 S. Ct. 1840 (1992). ____ _____________ At the sentencing hearing, the district judge encouraged government counsel to consider a departure. The assistant U.S. attorney declined, indicating that the information Jorge-Torres provided had not led to further arrests, and that consequently the government did not believe that it could find that substantial assistance had been furnished in this case. The prosecutor did not expressly dispute that the defendant had in good faith provided the government all of the information that she possessed. Defense counsel pressed the judge to afford a hearing on substantial assistance but offered no basis for thinking that -3- -3- anything could be adduced at the hearing beyond the facts already described, namely, that Jorge-Torres had done all she could, but the leads had not been helpful to the government. The district court expressed frustration with the guidelines- -in this instance the statutory minimum is the real culprit-- but found that the government's refusal to move for a departure made a further hearing pointless. A statutory minimum sentence of 10 years was then imposed. On appeal, counsel for defendant has made a constitutional attack on the statute and guidelines. It violates equal protection, so defense counsel argues, to impose a long sentence on Jorge-Torres, a low-level courier who tries her best to cooperate but has little information to give, while providing lower sentences to major drug dealers whose offenses are far more serious but who happen to have plenty of information to trade. Accordingly, defendant says that the substantial assistance regime as currently structured provides discrepant treatment that serves no rational purpose consistent with the ends of Congress. The equal protection test is not a demanding one where, as here, there is no suspect classification underlying the disparate treatment, nor a substantial burden on a protected constitutional right. See City of Cleburne v. Cleburne ___ __________________ ________ Living Center, 473 U.S. 432 (1985). It is not irrational to _____________ provide a reward to a kingpin whose information permits the -4- -4- government to shut down a drug network nor is it irrational to withhold such leniency from a less important member of the ring who tries to assist but has nothing to offer. Indeed, to offer leniency in exchange for useful information is not inherently a harsh arrangement: only the 10-year minimum makes it so. In any event, such a regime plainly does not lack a rational basis. But Jorge-Torres' argument has a somewhat sharper point. A reasonable classification, says defendant's brief, "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation . . . _________________________________ ." Johnson v. Robison, 415 U.S. 361, 374-75 (1974) (emphasis _______ _______ added). Here, the defendant argues, Congress aimed at achieving fairness in sentencing, and there is no fairness in giving the defendant a 10-year sentence when a drug kingpin could easily receive a lesser sentence for the same quantity of drugs as long as the kingpin brought along useful information to trade in exchange for a lighter sentence. It is not clear that this equal protection argument was ever squarely presented to the lower court but, as the government has not claimed waiver, we address the point on the merits. There may also be some doubt about the legal premise that an equal protection analysis has to be focused solely upon the specific objectives set forth by Congress and without resort to other possibilities. We need not pursue -5- -5- this point because even if the legal premise is sound, the claim of irrationality still fails in this case when measured against Congress' statutory purposes. In broad terms it can be said that Congress in its sentencing provisions aimed at fairness. Cf. 28 U.S.C. ___ 991(b)(1)(B) (mentioning fairness). But in fact an examination of the various statutes in which Congress has referred to the purposes of sentencing reveals a cross- current of objectives expressed at various levels of generality, e.g., 18 U.S.C. 3553(a) (listing seven ____ categories of matters to be considered). Worse still, from Jorge-Torres' standpoint, 18 U.S.C. 3553(e) expressly provides that departures below a statutory minimum may be allowed to reflect a defendant's substantial assistance in investigating or prosecuting others. Whatever one might say in the abstract about the fairness of the present structure, it is plainly not an irrational departure from the objectives that Congress itself __________ has set forth. On the contrary, affording great weight to substantial assistance--it is virtually the only occasion on which the statutory minimums may be disregarded--is Congress' __ purpose. While section 3553(e) may not literally command more favorable treatment of kingpins with information than for couriers without it, that outcome could easily have been foreseen when Congress adopted the provision. -6- -6- This court has not previously considered an equal protection challenge of this kind, although we earlier rejected a due process challenge to the substantial- assistance regime. See United States v. La Guardia, 902 F.2d ___ _____________ __________ 1010 (1st Cir. 1990). However, four other circuits have rejected equal protection challenges not very different from that advanced here.* The government has correctly not questioned our authority to review a constitutional attack on the provision, even though refusals to depart are normally not reviewable. La Guardia, 902 F.2d at 1012. But having __________ considered the issue on its merits, we reject the constitutional claim. A somewhat different issue might have been raised and, in the interests of justice, we feel compelled to remark upon it. From a review of the transcript of the sentencing hearing, one might think that the government here felt that it lacked authority to recommend a departure even if it wished to do so. It might appear that the assistant U.S. attorney was blaming the statutory "substantial assistance" requirement and saying that his office was unable to move for a departure because none of the leads provided by Jorge- ____________________ United States v. Musser, 856 F.2d 1484, 1486-87 (11th Cir. _____________ ______ 1988), cert. denied, 489 U.S. 1022 (1989); United States v. ____________ _____________ Rojas-Martinez, 968 F.2d 415, 419-20 (5th Cir.), cert. ______________ _____ denied, 113 S. Ct. 828 (1992) and 113 S. Ct. 995 (1993); ______ United States v. Horn, 946 F.2d 738, 746 (10th Cir. 1991); ______________ ____ United States v. Broxton, 926 F.2d 1180, 1183-84 (D.C. Cir. _____________ _______ 1991). -7- -7- Torres had resulted in an arrest or otherwise made any dent in a drug cartel. The "substantial assistance" phrase is a very general one. Despite some arguments to the contrary, we think that it is at least plausible to contend that the prosecutor is entirely free to treat as "substantial assistance" a defendant's provision of a substantial amount of information pertaining to the operation of a drug ring and--at least where the defendant has told all he or she can tell--to treat this as substantial assistance, regardless of whether it results in a further arrest or prosecution. If we thought that the government was generally confused about this matter, we would provide it with further opportunity for reflection in this case. The government points out that the guideline provision that paralleled the statutory provision had originally provided for a possible departure where defendant made "a good faith effort" to provide substantial assistance. See ___ U.S.S.G. App. C, amendment No. 290 (November 1989), deleting the "good faith" language and substituting the requirement that the defendant provide substantial assistance. However, the Commission's stated reason for the change--to require more than mere "willingness" to provide information, id.-- ___ does not cast much light on how much information is substantial. -8- -8- In fact, we have no reason to believe that the government is in any way confused about the broad scope of its authority to discern "substantial assistance" in a good faith proffer of specific information about a drug ring by a low-level defendant. Rather, we have a firm impression that prosecutors have taken a hard line in determining what they will regard as substantial cooperation. While this will seem harsh to many, it is likely that the prosecutors would explain--if they had any duty to explain--that it is difficult for them to tell if a defendant has actually given all that he or she knows. Thus, they might argue, the promise of a reward for results, and only for results, is a necessary resort. On this appeal, counsel for Jorge-Torres has not suggested that the prosector misunderstood the scope of his discretion. Further, there is no claim that the prosecutor was motivated by an unconstitutional purpose such as racial ________________ discrimination, a very small loophole that the Supreme Court has left open for possible judicial review of a prosecutor's refusal to move for a departure. See Wade, 112 S. Ct. at ___ ____ 1843. Defendant's brief does refer to this loophole but only to assert the equal protection claim already addressed and rejected. Affirmed. ________ -9- -9-